Good morning, Robert Rexford from Mr. Tieu. As I was preparing for this argument, it sort of dawned on me that the main disagreement between the parties, aside from what the panel should obviously ultimately do with this case, is how to view the district court's accusation of perjury during Mr. Tieu's direct examination. I mean, did that accusation create a conflict of interest between Mr. Tieu's attorney and Mr. Tieu, as I've raised in my opening brief, or is it, as the government characterizes it, a mere remark that the district court made and then backtracked on? And I think this comes down to the standard of review that this panel applies. This is a de novo review. The government is flat-out wrong about this. Whether a conflict had been created was raised before the district court. It was raised in my opening brief, and under this circuit's law, whether a person had conflict-free counsel is reviewed de novo. So this panel gets to decide whether a district court, sua sponte, calling a defense attorney up to the bar during the direct examination of his or her client and saying, quote, you are abetting perjury, end quote, whether that creates a conflict between what the Second Circuit calls a defense counsel's obvious interest against his own. Was the jury present when that was – when that comment was made? Did the jury hear the comment? I believe the jury was present. There's nothing to indicate the jury heard the comment. He was asked to approach the bench, so I assume it was a bench conference, right? Yes. That's my reading of the record. I was not the trial counsel. What do you do with a colloquy later on in the trial where defense counsel explains what the judge has done? And it would appear from at least my reading that the judge had a misunderstanding about the particular offenses that the defendant had admitted, which shows why he believed that the defense attorney was on thin ice. And then he says, okay, I understand. I always get the sense that the judge realizes that he was wrong about that. And having advised counsel, okay, I understand, or something along that nature, counsel still doesn't do direct examination. In other words, it seems that there may have been some kind of misunderstanding that the judge had that it gets cleared up. And then the counsel – why is counsel still under some – why is there a conflict once the issue has been resolved? Two parts to this answer. I don't think the issue ever was resolved, and I'll address that in just a moment. However, the conflict had existed and had an adverse effect on counsel's representation long before that second colloquy with the district court, and here's why. If you read the record, it's a sua sponte, come on up, counsel, I want to talk to you. You are abetting perjury. The next thing out of defense counsel's mouth after hearing that, literally the next thing on the transcript is, I can't go forward. I'm thinking about my criminal liability. I can't go forward. Comes back out into open court, no further questions, move for a mistrial. That's the adverse effect, and it happened right there. I mean, I've been doing this for 10 years. I was trained as a trial attorney at Federal Defenders of San Diego. I go to trainings, and it has never come across my mind that terminating direct examination of my client would be a strategic decision in the interest of my client. So the adverse effect had already taken place before this second colloquy. Turning now to whether or not the instance had actually been resolved or not, I don't think it had. I think it's still unclear as to why the district court did this. Whether he was – whether the district court was confused as to admissions that Mr. Tiu had made on the stand or whether the district court didn't like the form of defense counsel's questions, I think that's still ambiguous. But as I quote at length, and I hope it wasn't too long in my reply brief, the transcript is worth reading. The district court orders the defense attorney to continue the examination. The district court keeps denying that he accused the attorney of perjury. It's not like the district court said, you know what, I was mistaken. I was mistaken about what your client had said. My bad. I take back that perjury thing I just said. Well, I think there's two ways to read the transcript, because if you give it a fair reading, I think the district court said, look, you're about to aid and abet in the commission of perjury, and if you continue along the same line of questioning in the same manner that you're going, that's what's going on. And as Judge Benavides pointed out, the court seemed to be under some misunderstanding as to what the defendant had admitted to. But later on, the district court clarified that to say, look, I'm not making an accusation, and you have an obligation to continue representing your client. Viewing all of the comments and the sequence of the conversations with defense counsel, why isn't that a fair, just as fair, if not a fair reading of the record? For two reasons. Because, I mean, this is the quote. Quote, you are now abetting perjury. There's nothing prospective about that. There's nothing about, hey, you're getting pretty close to the line here, counsel. It would be pretty scary for an attorney to be told by a Federal district judge. It would be scary enough where a defense attorney might do something like stop asking his client's question on direct examination because he or she is afraid of a marshal coming up and tapping him on the shoulder. And whether the district court later said, look, that's not what the district court said. It didn't say there was a misunderstanding. He kept saying, I didn't accuse you of that. At one point, the district court gets frustrated and says, look, it's in the record. It is in the record. At one point, counsel says to the judge, let's have a readback. Indeed. And the judge says no. Denies that. And again, I would go back to my first answer to Judge Benavidez's question. The damage had been done. The conflict had been created. The adverse effect had taken place long before the colloquy the next day, long after defense counsel's renewed motion for mistrial. The damage had been done. And I think there's a reason why, under this Court's precedent, that if an adverse effect takes place, and it did, you can't say, I mean, this was Mr. Teo's shot to talk to the jury. This was him saying, I didn't do it. This was his defense. You can't say that halfway between that defense, his lawyer going, I got nothing else, Judge. I'm sitting down. You can't say that that was anything other than a product of an attorney laboring under a colleague. It's kind of like, well, if you put it in context, it's after having committed some extraneous offenses that had previously occurred. He stops and doesn't explain. Yes, I admit to those things, but I'm not admitting to this because I didn't do these things. I tend to agree. So what the last impression the jury gets before the lawyer refuses to answer any questions was this guy's admission to committing other offenses, which he's not charged with. Sure, the state court offenses. And no matter what the government wants to say about defense counsel finishing the examination later or the impact of closing argument later, the reason why this we don't look at prejudice is because we will never know the structure of defense counsel's questions to Mr. Chew and whether those questions were the same, structured the same, asked the same, subject matter gone into in the same way as that defense counsel would have done before a Federal district judge accused him of perjury. Should you have made a proffer of the questions that you're going to ask? I was not trial counsel. Should have defense it. I've always found that appellate proffers are helpful, but no, in this situation I just don't think so. I'm down to about 20 seconds if I could reserve. Thank you. Good morning, Your Honors. May it please the Court. Christina Shea for the appellees of the United States. I'd like to begin briefly with the substitution request issue raised in the briefs. The three elements in reviewing a district court denial of a motion to appoint new counsel are the adequacy of the district court's inquiry, the timeliness of the substitution motion, and also, third, whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense. There is no real dispute as to the first or second prong, Your Honors. As to the first prong, the district court in this case did not conduct an inquiry into defendants' reasons. There's also no real dispute as to the second prong. The request was untimely. Unlike in Torres-Rodriguez, retained counsel was not present in the courtroom as it was as they were in Torres-Rodriguez, and therefore, there was a certain term. Well, let's assume that the request was untimely. What was the record upon which we can say that the district court made an informed decision? Your Honor, the district court did not review the letter from defendant. So therefore, the district court did not conduct an inquiry into those reasons of the defendant. However, the government would submit that that third prong, whether or not those reasons evidenced a complete breakdown in communication, is different from the first prong as to whether an adequate inquiry was conducted by the district court. And this Court does have before it the letter containing the defendant's reasons, and those reasons are numerous, but the government would submit for the reasons stated in its briefs don't evidence a complete breakdown of communication. Counsel, didn't you urge the district court to conduct a hearing? Your Honor, in the interest of avoiding this, the government did ask the district court to conduct a hearing. However, the government would submit that based on the case law, a hearing was not actually needed based on the reasons that defendants submitted after the government's request for a hearing. Counsel, there's a little bit of a mixture here. We have this argument about the accusation that the district judge made. But that was after the issue here is the failure to conduct a hearing or to grant  Yes, Your Honor. So the letter, we've spent a lot of time talking about what the judge did during the trial, but the letter doesn't evidence what's going to happen later on. You couldn't tell from that letter what the judge was going to do. So I guess what I'm saying is what is the relevance of the district judge's accusation, irrespective of what we might feel about it being improper, have to do with the previous, at the time, motion for new counsel? Was that renewed during the trial after what the judge said? In other words, was the motion for new trial after what the judge said based upon just what the judge said, or was it you need to appoint a new attorney? Your Honor, the request for mistrial was based on just what the judge said. Not on the request for substitution of counsel. And just as my final point on that first issue raised in appeal, because I believe the Court is focused more on the conflict issue, this was not in the briefing, but the government would be happy to submit a 28J letter where this Court has held that the appropriate remedy for an inadequate inquiry, if the Court so finds, is to remand the case to the district court to conduct a proper inquiry into the nature and extent of the conflict between defendant and his counsel, not a reversal of the conviction, then that is United States v. Moussa, M-U-S-A, 220 F. 3rd, 1096, Ninth Circuit case in 2000, which is approximately a decade after Torres-Rodriguez. There's also a question. Counsel, I mean, I appreciate that in some circumstances that seems like it might be the right thing to do. I mean, we've just had years that have passed, you know, trying to recreate sort of emotions and things that come in time at this point seems a little futile, doesn't it? Well, Your Honor, the other case in which the Court ordered a vacated, ordered a remand for a hearing on the adequacy of counsel for the reasons for the irreconcilable conflict reasons was in Schell, which is a 2254 case, which as this Court is aware takes many more years than a direct appeal. And in that case, this Court did not feel that it was futile. And the citation for that case is 218 F. 3rd, 1017 in this Court in 2000. And this trial actually took place only fairly recently, and the briefing was completed a delay of a couple years. The trial judge at the trial court in this case would be familiar with the case, as would defense counsel. Now turning to the conflict issue. Under a de novo conflict analysis, defendants still must show that there's an actual conflict that caused an adverse effect, and that this actual conflict and adverse effect was the result of the district court saying you are now abetting in perjury and almost immediately saying right afterwards it was not the prosecutor, and then repeatedly saying it was not accusing defense counsel of anything. To show actual conflict, the adverse effect must affect basic strategic decision, and that's this Court's decision in Wells. Counsel, let me ask you this question. If you're a defense counsel, one is a defense counsel, and he's charged with the zealous defense of his client, and that's what he's supposed to do, and that's what he's doing, and he has a strategy to admit certain offenses but to deny others. And when he admits those offenses, he is stopped because the judge says you are abetting perjury. How is the fear that he has to how can that not conflict and be just so diametrically opposed to his duty to represent that person if he continues to represent him in the way that, by the way, is proper for him to do, he might be arrested. How is how can you get into that situation where he's not at odds in protecting himself from the judge accusing him of crime? Why isn't that at odds with his duty to represent that client in the best way that he knows how at that time? Your Honor, two responses to that. First, in the direct examination, the defendant does get through, the defense counsel and the defendant do get through his denials that he committed the charged conduct before getting to the uncharged conduct. The second response is that the judge, immediately after he says you are now abetting perjury, says I'm not the prosecutor. You know, a defense counsel has a number of considerations any time he's presenting a zealous defense. There are ethical rules against suborning perjury. There are, you know, various rules. There's also the possibility that the judge could at any point place him in contempt. These are not fears. These are not fears that are completely made up by this judge. These are ethical considerations that every person has. More importantly, however, after defense counsel ends his direct, there's a lengthy and detailed redirect, which all of this comes in. The redirect demonstrates that defense counsel did not actually feel that he was under any threat of criminal prosecution. Much of that testimony was. Counsel, isn't that difficult? That's pretty difficult to tell. I mean, you know, if I warned you not to make an argument in front of me, it certainly might, you know, tinge everything else that you said. Your Honor, based on the nature of and the subject matter of that redirect, the government believes that it did not tinge what was said. There were leading questions through what would be, in light of the jury's verdict, untruthful testimony by the defendant that his counsel led him through. And much of that, some of that testimony is quoted in the briefs. It is something. Kennedy. Would you explain to me then what you're saying is that the judge didn't just have a misunderstanding. He was correct. And that those leading questions, that he was abetting perjury? And why? Tell me how those leading questions were close to abetting perjury. Rather than using the term abet leading questions. Your Honor, the government's position is not that defense counsel was abetting perjury. I'd like to make that clear for the record. The government believes that the judge did have a misunderstanding, as was evidenced in that transcript. He, it's possible he also made an intemperate comment and right afterwards realized he had made an intemperate comment while everyone was still at sidebar and said, I'm not the prosecutor here. And then said, I'm not accusing anyone of anything. And backtracked from that comment. The government's position on redirect is only that if defense counsel really felt that he was under threat of a marshal tapping him on the shoulder at any point, he would not have gone into the topics that he went into. And in state court, for example, when defense counsel believes that he's under threat of suborning perjury, he uses open-ended questions in a narrative form. However, in this case, the questions are leading. The questions are, well, look at the hair. What did you think about the hair? And then defendant says, well, the hair is different. And then also, you know, why weren't you allowed in Caesar's palace again? And then he helps him through that line of testimony. Was it because there were photographs taken of you? Well, yes, there were. What does that mean? It means that I was banned from the casino. And so those sorts of questions were not questions that he would have gone into really if he felt the marshals were about to tap him on the shoulder at any moment. In addition, a comparison of the opening and closing statements in this case demonstrates there is no shift in basic trial strategy. Defense counsel framed this case as about misidentification and whether the jury believed the defense counsel was the person in the videos, the numerous photographs, and defense counsel's closing was also about the same thing. And in addition to that, defense counsel's closing included most of the – many of the defendants' excuses, first behavior, and the reasons why he couldn't have possibly committed those crimes. Counsel, you are – I know you've asked too many questions. You are almost two minutes over your time. Oh, I apologize. So if you want to sum up. Your Honor, just finally, the government would agree with Judge Benedetti that defense counsel does not make a proffer of what other information that he would want to present was unable to do so because of this purported conflict. And the government would believe that at that point there is no conflict and that the conditions would be affirmed. Thank you, Your Honor. Okay. Thank you. If you'll add another minute to Mr. Rexrod's time. Thank you, sir. A side issue. The two cases that government counsel cited for the proposition that this Court has the ability to remand on the denial of a request for new counsel, I think those would have been more appropriate for a 28-J letter. I'll obviously listen to the transcript and check those citations. I haven't read the cases. I can't comment on them. I counted three times that government counsel said that maybe, you know, intemperate immediately said, I'm not the prosecutor, and then said, I'm not accusing you of anything. That third thing is not true. At ER, 20 to 21 is the full sidebar colloquy before defense counsel terminates his direct examination of his client. And it reads, you are now abetting perjury. I don't think I can pursue. I'm going to commit a crime by interviewing my witness on the stand. The court, I'm just telling you the motion is denied. Counsel, now can I continue my cross-examination? The court, that's up to you. Counsel, you are saying I'm going to commit perjury. The court, I'm not the prosecutor here. Counsel, sounds like you are. Court, you are counsel. I'm asking you, the court, I'm giving you something to consider. When the court said, I'm just telling you the motion is denied, what was the court referring to? I have no idea, Your Honor. These are the transcripts as were provided. There wasn't any motion. There wasn't any objection from government counsel. There wasn't any motion from defense counsel. I agree. As I said, these are the transcripts as provided by the court reporter. Whether the district court was anticipating the ultimate motion that came, I can't tell you whether there was something missing from the transcript. Again, I can't tell you. What I'm saying is, in the transcript at ER 20 to 21, before the termination of the examination, the district court never says, I'm not accusing you of anything. He accuses him of perjury, and then he says something on a dry transcript that can be read either way. That's a little chilling to me. I'm just giving you something to consider. Now, good luck to you. Get back to your question. It was wrong. It should be fixed. Thank you, counsel. We thank both counsel for the argument.
judges: Benavides, Bybee, Nguyen